IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID D. WISE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 10-1677 |
| ) | Judge Nora Barry Fischer |
| WASHINGTON COUNTY; CAPTAIN ) | |
| MICHAEL KING, individually and in his ) | |
| capacity as a Washington County Corrections ) | |
| Officer; C.O. MARK KELLY, individually ) | |
| and in his capacity as a Washington County ) | |
| Corrections Officer; VICTORIA GORONCY, ) | |
| individually and in her capacity as a ) | |
| Washington County Corrections Nurse; and ) | |
| LAVERNE ROSSI, individually and in her ) | |
| capacity as a Washington County Corrections ) | |
| Nurse; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

This is a civil rights action brought by Plaintiff David D. Wise pursuant to 42 U.S.C. § 1983 and state law, alleging that Defendants violated his Constitutional rights by being deliberately indifferent to his serious medical needs. This matter had initially been set for trial to commence on July 10, 2013. (Docket No. 111). However, during the Pretrial Conference held on June 27, 2013, the Court postponed the trial given numerous disagreements raised by counsel and the substantial possibility that trial proceedings would exceed the time window that had been allotted. (Docket No. 144). Among the disputes at the Pretrial Conference were allegations by Defense counsel Mr. Joyal that Plaintiff counsel Mr. Fisher committed two ethical breaches during the course of litigation. The first alleged breach, which is the subject of this Memorandum Order, involves Mr. Fisher's attempt to use an inadvertently disclosed memorandum from

Defendant Michael King to Mr. Joyal for impeachment purposes.[1]

Following the Pretrial Conference, Defendants filed a "Motion to Preclude Inadvertently Disclosed Privileged Documents from Being Referenced at Trial and for Disqualification of Plaintiff's Counsel," (Docket No. 157), along with an affidavit by Mr. Joyal. (Docket No. 156). Plaintiff countered with affidavits by Mr. Fisher (Docket No. 158) and co-counsel Mr. Tucker, (Docket No. 159), as well as a response brief. (Docket No. 160). A hearing was held on August 23, 2013, and the transcript was ordered, prepared, and filed of record. (Docket No. 162). With this Court's review of the transcript of the oral arguments, this matter is now ripe for disposition. Upon consideration of Defendants' Motion, the briefs, the affidavits, and arguments from both counsel, the Court denies Defendant's Motion, only as to the use of the inadvertently disclosed document.

Prior to delving into the substance of Defendant's motion to preclude Defendant King's memorandum from use at trial, the Court must explain the convoluted procedural history of this case. Simultaneous to the prosecution of this lawsuit, lead counsel for both parties were also locking horns in another case in this District, *Consonery v. Pelzer*, Civ. No. 09-1510, (W.D. Pa.), which involved several of the same personnel of the Washington County Correctional Facility ("WCCF") as in this case. (Docket No. 156, at ¶¶ 3-4). As part of a discovery production in *Consonery*, Mr. Joyal inadvertently disclosed a memorandum report by named Defendant Mr. King regarding the case at bar as part of a larger disclosure package through an e-mail sent on December 23, 2011.[2] (Docket No. 156, at ¶¶ 5-6). Besides Mr. King's memorandum, a number of communications in this package were addressed to Mr. Joyal by WCCF staff. *See* (Docket

---

[1] The second alleged breach involves the nature of Mr. Fisher's relationship with a witness, Theodore Melencheck, and whether such relationship is grounds for disqualification to the extent that it may make Mr. Fisher a witness in this case. The Court reserves ruling on this issue for a later date.

[2] The entire package of documents that were disclosed to Plaintiff counsel was admitted as Plaintiff's Exhibit 1 during the oral argument held on August 26, 2013. (Docket No. 161-2).

Nos. 161-2, at 2, 20, 32, 34, 36, 38, 39, 40). During the February 1, 2012 deposition of Mr. Consonery,[3] Mr. Fisher presented the package of disclosures, including the memorandum from Mr. King pertaining to this case. (Docket No. 156, at ¶ 8; Docket No. 156-1, at 35-36). Recognizing that documents had been inadvertently disclosed,[4] Mr. Joyal then demanded the return of all documents covered by the attorney-client privilege. (Docket No. 156, at ¶ 10; Docket No. 156-1, at 35).

This inadvertent disclosure issue was raised before Judge Kelly during a status conference on February 14, 2012 in the *Consonery* case.[5] (Docket No. 156, at ¶ 13). Judge Kelly directed the parties to amicably resolve the issue; however, short of same, Mr. Joyal was to file an appropriate motion.[6] (Docket No. 156, at ¶ 13; Docket No. 158, at 5; Docket No. 159, at 3).

---

[3] In *Consonery*, the deposition of Mr. Consonery was taken on January 4, 2012 and continued to February 1, 2012. (Docket No. 156, at ¶ 8; Docket No. 158, at 2-3).

[4] Mr. Fisher has testified that during Mr. Consonery's deposition, Mr. Joyal was only focused on the communication from John Temas, a witness in that case, rather than the memorandum from Mr. King or any other WCCF employee. (Docket No. 158, at 3-4). Mr. Temas's statement is indeed included as part of the disputed disclosures sent by Mr. Joyal's office. (Docket No. 161-2, at 41).

[5] At the time the Case Management Order was entered in this case, the Local Rules of Civil Procedure had not yet been amended to require Case Management Orders to include language regarding procedures for dealing with inadvertent disclosures. Thus, the Case Management Order here did not have a "clawback" provision. *See* (Docket No. 14). The following language is now integrated into all Case Management Orders by default:

> Pursuant to Local Rule LCvR 16.1(D), and to aid in the implementation of Fed. R. Evid. 502, the following is ordered in the event of an inadvertent disclosure of any privileged or trial preparation/attorney work product material:
> a) The producing party shall promptly notify all receiving parties of the inadvertent production of any privileged or trial preparation material. Any receiving party who has reasonable cause to believe that it has received privileged or trial preparation material shall promptly notify the producing party.
> b) Upon receiving notice of inadvertent production, any receiving party shall immediately retrieve all copies of the inadvertently disclosed material and sequester such material pending a resolution of the producing party's claim either by the Court or by agreement of the parties.
> c) If the parties cannot agree as to the claim of privilege, the producing party shall move the Court for a resolution within 30 days of the notice set forth in subparagraph (a). Nothing herein shall be construed to prevent a receiving party from moving the court for a resolution, but such motion must be made within the 30-day period.

Local Rule LCvR 16.1(D).

[6] During oral argument, Mr. Joyal repeatedly emphasized that Judge Kelly had also instructed Mr. Fisher and Mr. Tucker to "return the documents" that were inadvertently disclosed. While Mr. Joyal acknowledged

On March 5, 2012, Chief Magistrate Judge Lenihan conducted a status conference in this case, wherein "extensive discussion took place about a privileged document that was inadvertently produced." (Docket No. 66). During this status conference, Judge Lenihan instructed Mr. Joyal to file a motion to claw back this document. *Id.* To date, Mr. Joyal has filed no such clawback motion either in this case before Judge Lenihan or in *Consonery* before Judge Kelly.

Since the amendment of Rule 502(b) of the Federal Rules of Evidence, courts deciding inadvertent disclosure issues have followed a two-step analysis: "[f]irst, it must be determined whether the documents in question were privileged or otherwise protected and second, if privileged documents are produced then a waiver occurs unless the three elements of FRE 502(b) are met." *Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, Civ. No. 09-261, 2009 WL 3319820, at *2 (W.D. Pa. 2009) (Ambrose, J.) (citing *Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D.N.J. 2009)). The disclosed document is on its face a memorandum report from Mr. King to his attorney Mr. Joyal regarding the "David D. Wise" matter.[7] Indeed, this memorandum

---

receiving the documents by e-mail, he asserts that their failure to also delete the documents from their hard drives amounted to a violation of Judge Kelly's directive. The Court notes that Judge Kelly's minute entry regarding this conference only states: "Attorney Tucker directed to forward the email back to Attorney Joyal. Parties to try to resolve the issue." *Consonery*, Civ. No. 09-1510, (Docket No. 66, at 1). No reference was made to destruction or deletion of the documents in Plaintiff's possession. Furthermore, it makes little sense for Plaintiff's counsel to destroy the documents at issue given Judge Kelly's additional instruction that "Defendant to file a motion and the court will issue scheduling order and possibly conduct an in-camera review of the statements." *Id.* If the documents were no longer in Plaintiff's possession, Defendants would have no reason to file a motion to resolve the privilege dispute.

[7] "The [attorney-client] privilege applies only to a 'communication … made between privileged persons … in confidence … for the purpose of obtaining or providing legal assistance for the client.'" *Cottillion v. United Refining Co.*, 279 F.R.D. 290, 298 (W.D. Pa. 2011) (citing *In re Teleglobe Commc'ns. Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)) (omissions in original). As Judge Ambrose explained:

> The Supreme Court has held that "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fischer v. United States*, 425 U.S. 391, 403 (1971). "[T]he purpose of the attorney-client privilege is to encourage 'full and frank communication between attorneys and their clients.'" *Westinghouse v. Republic of the Phillipines*, 951 F.2d 1414, 1423 (3d Cir. 1991). It gives the client the right to object to the disclosure of any privileged communications made during the relationship. *United States v. Inigo*, 925 F.2d 641, 656 (3d Cir. 1991). However, "for communication to be privileged, it must have been made for the purposes of securing legal advice."

contains numbered responses that match paragraph-for-paragraph with the allegations of fact against Mr. King presented in the original Complaint. *See* (Docket No. 1). Accordingly, it constitutes a privileged communication from the client to his attorney regarding the matter in litigation for the purposes of securing legal services and assistance on how to proceed. *See Cottillion v. United Refining Co.*, 279 F.R.D. 290, 298 (W.D. Pa. 2011) (citation omitted).

Although this disclosed document is privileged, the Court finds that Defendants' claim of privilege was waived pursuant to Rule 502(b) of the Federal Rules of Evidence. A disclosure of materials otherwise protected by attorney-client privilege "does not operate as a waiver … if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[8] FED. R. EVID. 502(b). The disclosing party has the burden of proving that each of the three elements of Rule 502(b) has been met.[9] *Rhoades*, 2009 WL 3319820, at *2 (citing *United States v. Sensient Colors*

---

*Kelly v. Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997).

*Rhoades*, 2009 WL 3319820, at *2.

[8] In turn, the Federal Rules of Civil Procedure provide further guidance on the parties' duties and responsibilities when an inadvertent disclosure is made:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

FED. R. CIV. P. 26(b)(5)(B).

[9] Courts in this Circuit also consider five related factors relevant to the issue of inadvertent disclosure of privileged material:

(1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production.
(2) The number of inadvertent disclosures.

*Inc.*, Civ. No. 07-1275, 2009 WL 2905474, at *3 (D.N.J. Sept. 9, 2009)).

Based on the submissions in the record, Defendants have not met their burden of showing that all of the Rule 502(b) requirements have been met. It is uncontested that the disclosure in this case was inadvertent. However, Defendants have presented little evidence about the precautions taken to prevent the inadvertent disclosure. Mr. Joyal explains that it is the practice of his office to scan all documents received in a case in order to easily attach them to e-mails and court filings. (Docket No. 156, at ¶ 7). Because his usual secretary had been on vacation at the time the inadvertent disclosure were made, he believes that all the inadvertently disclosed documents were e-mailed to Plaintiff's counsel by a substitute secretary. (Docket No. 156, at ¶ 15). Nothing in his affidavit indicates how he supervises his subordinates or whether he performs a final review prior to transmission in order to guard against inadvertent disclosures. During oral argument,[10] Mr. Joyal was unable to speak to the general practice of other attorneys in his law firm or at Travelers Insurance with respect to preventing inadvertent disclosures. (Docket No. 162, at 16). While he represented that in the normal course of events there would be an attorney who would review documents before they were sent to opposing counsel, there was no attorney with knowledge of the case who reviewed the documents in this instance because the disclosure took place during the holidays, when a number of attorneys and staff were out of the office. *Id.* at 16-17.

An attorney's responsibilities, however, do not take a holiday. Nothing prevented Mr.

---

(3) The extent of the disclosure.
(4) Any delay and measures taken to rectify the disclosure.
(5) Whether the overriding interests of justice would or would not be served by relieving the party of its errors.

*Rhoades*, 2009 WL 3319820, at *2 (citations omitted); *see also Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 247 (W.D. Pa. 2012) (Gibson, J.) (citing *Rhoades*).

[10] Mr. Joyal was not sworn during the hearing and argument. As an attorney and officer of the Court, the Court nevertheless accepts these representations as they were not challenged by Mr. Fisher.

Joyal from asking another attorney in the office to review what the substitute secretary planned to forward to Plaintiff's counsel and to call him (even on his holiday vacation) in order to properly vet the disclosure before submission to his opponent. Alternatively, nothing prevented him from seeking an extension until after his holiday vacation at which time he could have personally reviewed the challenged documents.

As to the remedial measures taken following the inadvertent disclosure, the record shows that Mr. Joyal was clearly told by both Judges Kelly and Lenihan in February and March of 2012, respectively, to file motions to claw back the King memorandum. More than a year and a half later, Defendants finally filed the subject Motion on July 26, 2013. (Docket No. 157). Such an inexcusable delay cannot constitute compliance with Rule 502(b). *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (failure to provide notice of inadvertent disclosures for one year and three months constituted a waiver of privilege). Accordingly, the Court finds that privilege has been waived.

The Court acknowledges that Mr. Joyal relies, in part, on a decision of this Court to support his position. Yet, the Court's previous ruling in *Nesselrotte v. Allegheny Energy, Inc.*, Civ. No. 06-1390 (Docket No. 189) (W.D. Pa. May 6, 2008) (Fischer, J.),[11] does not alter the conclusion that there was a waiver in this case. The circumstances involving the inadvertent disclosures in *Nesselrotte* are factually dissimilar to those involving the disclosure that is the

---

[11] The facts of the *Nesselrotte* case are more fully stated in the Court's later writing in the same case issued on July 22, 2008. *Nesselrotte v. Allegheny Energy, Inc.*, Civ. No. 06-1389, 2008 WL 2858401 (W.D. Pa. July 22, 2008) (Fischer, J.). The plaintiff in *Nesselrotte* had been a senior in-house attorney in Allegheny Energy's legal department and had filed suit based on allegations of age discrimination under federal and state law. *Id.* at *1. The defendants' counterclaim asserted that the plaintiff had removed confidential, privileged, and attorney-client privileged information from the workplace without authorization, thereby constituting a breach of fiduciary duty and violating an employee confidentiality agreement. *Id.* In responding to the lawsuit, the defendants had also used a number of documents that the plaintiff believed were otherwise privileged and she argued that such privilege had been waived. *Id.* at *5-7. The plaintiff also attempted to use privileged information to prosecute her employment discrimination claim as well as defend against criticism of her professional abilities. *Id.* at * 8. However, the Court held that "[a]t this point in the litigation ... [d]efendants have not placed advice of counsel at issue or disclosed any attorney client privileged communication and therefore, there has been no waiver of the attorney client privilege." *Id.* at *7.

7

subject of the pending motion. As discussed in the May 6, 2008 *Nesselrotte* decision, which pre-dates the September 19, 2008 amendment of Rule 502(b) of the Federal Rules of Evidence, Pub. L. No. 110-322, 122 Stat. 3537, the Court had found that the defendants had taken reasonable precautions to guard against inadvertent disclosures in light of the extent of the requested production of over 100,000 pages of documents, that the forty-nine pages of privileged documents were a small fraction of what was produced and not substantial, and that defendants had taken appropriate steps to recover the documents without delay. Civ. No. 06-1390 (Docket No. 189, at 4-6). In contrast, the specific disclosure here consists of forty-seven pages of documents, of which two pages are now being claimed as privileged. (Docket No. 161-2). There is no argument that the production was so voluminous that review of each page would have been impractical, and the Court would not be inclined to so find. And, as previously noted, Mr. Joyal has failed to show that he took sufficient measures to remedy his inadvertent disclosure.[12]

**ORDER**

Based on the foregoing,

IT IS HEREBY ORDERED that Defendants' "Motion to Preclude Inadvertently Disclosed Privileged Documents from Being Referenced at Trial and for Disqualification of Plaintiff's Counsel" [157] is DENIED, in part. However, the King memorandum may be used for cross-examination purposes, only.[13] It will be referred to as a prior writing made by Mr. King

---

[12] To the extent that Mr. Fisher's responsibilities as the recipient of inadvertently disclosed information pursuant to Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure are implicated, the Court notes that he has submitted an affidavit and made oral representations at the hearing as an officer of this Court that he resisted using and sequestered the King memorandum. (Docket No. 158, at 7; Docket No. 162, at 31).

[13] Where an attorney is in receipt of confidential documents, that attorney "has ethical obligations that may surpass the limitations implicated by the attorney-client privilege and may apply regardless of whether the documents in question retain their privileged status." *Burt Hill, Inc. v. Hassan*, 2010 WL 419433, at *4 (W.D. Pa. Jan. 29, 2010) (Bissoon, M.J.) (citing *Herman Goldner Co., Inc. v. Cimco Lewis Indus.*, 2002 WL 188733 (Pa. Comm. Pl. Jul. 19, 2002)). Under Rule 4.4(b) of the Pennsylvania Rules of Professional Conduct and the ABA's Model Rule 4.4(b) on which it is based, "[a] lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly

related to this lawsuit. Examination based on same shall be limited in scope to avoid any further breach of the attorney-client privilege.

> *s/Nora Barry Fischer*
> Nora Barry Fischer
> United States District Judge

Date:   September 10, 2013
cc/ecf: All counsel of record

---

notify the sender." However, Rule 4.4(b) does <u>not</u> require the return of any inadvertently disclosed documents. As the comments to Rule 4.4(b) clarify, "[w]hether the lawyer is required to take additional steps, such as returning the original document, is a matter of law beyond the scope of these Rules, as is the question of whether the privileged status of a document has been waived."