# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID D. WISE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 10-1677 |
| vs. ) | Judge Nora Barry Fischer |
| ) | |
| WASHINGTON COUNTY; CAPTAIN ) | |
| MICHAEL KING, individually and in his ) | |
| capacity as a Washington County Corrections ) | |
| Officer; C.O. MARK KELLY, individually and ) | |
| in his capacity as a Washington County ) | |
| Corrections Officer; VICTORIA GORONCY, ) | |
| individually and in her capacity as a ) | |
| Washington County Corrections Nurse; and ) | |
| LAVERNE ROSSI, individually and in her ) | |
| capacity as a Washington County Corrections ) | |
| Nurse; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Presently before the Court is the Defendants' "Motion to Preclude Inadvertently Disclosed Privileged Documents from Being Referenced at Trial and for Disqualification of Plaintiff's Counsel." (Docket No. 157). The Court previously ruled on the first part of the Motion, dealing with inadvertently disclosed documents. (Docket No. 163). The Court now takes up the second part of the Motion, in which Defendants' counsel, Mr. Joyal and Ms. Lazo, urge the Court to disqualify Plaintiff's counsel, Mr. Fisher and Mr. Tucker, from representing Plaintiff at trial.

The disqualification issue was first raised during the Pretrial Conference, when Mr. Joyal suggested that Mr. Fisher may have solicited testimony from Plaintiff's witness Theodore

1

Melencheck, or that Mr. Fisher obtained his testimony through a quid pro quo relationship, creating the possibility that Mr. Fisher may offer testimony at trial regarding Mr. Melencheck's bias. (Docket No. 155, at 68–71). The present Motion followed, raising two separate theories for disqualification. (Docket No. 157). First, Defendants argue that Mr. Fisher should be disqualified because of the potential that he will be called as a witness. (*Id.* at 10–18). Second, Defendants argue that both Mr. Fisher and Mr. Tucker should be disqualified based on their retention of inadvertently disclosed documents. (*Id.* at 18–19). The matter has been fully briefed, and the Court heard arguments on August 26, 2013. (Docket Nos. 157; 160; 161; 162).

I. **FACTUAL BACKGROUND**

Defendants argue primarily that Mr. Fisher should be disqualified because he may give testimony relating to his dealings with Mr. Melencheck. (Docket No. 157, at 10–18). The Court now turns to the evidence relating to Mr. Melencheck's involvement with this case.

A. **Mr. Melencheck's Course of Dealings with Attorney Fisher**

Mr. Melencheck was incarcerated in the same unit of the Washington County Correctional Facility as Plaintiff in July 2010, and claims to have "personally witnessed the inhumane treatment" on July 16, 2010 of which Plaintiff complains. (Docket No. 157-3, at 1). Mr. Melencheck testified in his deposition that he became involved in this case after he read a newspaper article about Plaintiff's lawsuit,[1] found Mr. Fisher's contact information through a cousin, and then wrote several letters to Mr. Fisher. (Docket No. 86-11, at 4, 11). Mr. Melencheck estimated that he wrote the first letter to Mr. Fisher toward the end of 2010. (*Id.*). He did not retain

---

[1] The parties agree that only one newspaper article appeared about Plaintiff's case. (Docket No. 157, at 12; Docket No. 160, at 9–10; Docket No. 162, at 89). The article in question was published on December 16, 2010. *Man Files Complaint Against Washington County Jail*, Pittsburgh Post-Gazette, Dec. 16, 2010. (Docket No. 157-5).

a copy, but recalls that in the letter he introduced himself to Mr. Fisher and summarized what he had seen during the events at issue in Plaintiff's case. (*Id.* at 4). This first letter apparently was not mailed, as Mr. Melencheck testified that it was returned to him in the jail without any postmark. (*Id.* at 11).

Later, Mr. Melencheck wrote a second letter, which Mr. Fisher received. (Docket No. 86-11, at 4; Docket No. 158-1, at 1). Although the letter was not dated, the envelope containing this statement was postmarked March 15, 2011. (Docket No. 158-1, at 1–2). In this letter, Mr. Melencheck asserted that he personally witnessed Mr. Wise suffering a seizure and Defendants' failure to respond appropriately. Specifically, he saw Mr. Wise turn "just a few shades lighter than the color blue of the Pennsylvania State flag, and was placed on the stretcher as he was shaking more than a salt shaker." (*Id.* at 1). He also drew a picture of the cell area where both he and Mr. Wise were housed. (*Id.*).

Mr. Fisher responded by sending one blank affidavit for Mr. Melencheck to complete. (Docket No. 158, at 8, ¶ 3; Docket No. 158-1, at 3–6). In turn, Mr. Melencheck replied by letter dated March 25, 2011 with a handwritten affidavit on his own paper. (Docket No. 158, at 8, ¶ 3; Docket No. 158-1, at 7–9). This affidavit was then transcribed by a member of Mr. Fisher's staff verbatim into the blank affidavit template and sent to Mr. Melencheck for his signature, along with a letter dated April 5, 2010,[2] wherein Mr. Fisher writes "[i]f you are still willing, please sign the statement and return it to me as soon as possible." (Docket No. 158, at 8, ¶ 3; Docket No. 158-1, at 11–14). The signed affidavit was returned, unaltered except for the correction of the spelling of

---

[2] Mr. Fisher avers that this letter was incorrectly dated, and that it was actually sent on April 5, 2011, not 2010. (Docket No. 158, at 8, ¶ 3; Docket No. 160, at 9, 12). In support of this contention, Mr. Fisher points out that Plaintiff Wise entered Washington County Correctional Facility on May 1, 2010, meaning that "Plaintiff's counsel would have to possess supernatural powers" to predict the future if, in fact, he had actually written the letter in April 2010. (Docket No. 160, at 9).

3

Mr. Melencheck's last name. (Docket No. 158, at 8, ¶ 3).

Subsequently, Mr. Fisher avers that in May and June 2011, he approached Mr. Joyal with respect to referenced inmate-witnesses, requesting "proper assurances" that such inmates "will not suffer retribution from Jail personnel." (Docket No. 20, at 1; Docket No. 158, at 8, ¶ 4). Mr. Fisher explains that he sought these assurances because he had researched Mr. Melencheck on the UJS docket and discovered that Mr. Melencheck would be transported to Washington County for a hearing in an unrelated case,[3] during which time he would be temporarily incarcerated at WCCF. (Docket No. 158, at 8, ¶ 5). Given that Mr. Melencheck's letter referenced mistreatment and fear of retaliation at the hands of WCCF officials, Mr. Fisher believed it would be appropriate to seek assurances from Mr. Joyal. (*Id.* at 8–9, ¶ 5).

The parties were unable to agree as to whether Mr. Fisher's request for assurances was valid. (Docket No. 162, at 75). Mr. Fisher declined to provide the names of the witnesses for whom he sought assurances, and Mr. Joyal declined to provide assurances for unnamed individuals. (*Id.*). In lieu of receiving assurances, on June 9, 2011, Mr. Fisher filed a Motion for a Protective Order "that he need not disclose the names of the witnesses that fear retribution until proper assurances are provided that they will not suffer retribution from Jail personnel." (Docket No. 20, at 2). Chief Magistrate Judge Lenihan granted this motion to the extent that the identities of these witnesses would only be disclosed to the warden and deputies of the Washington County Jail, and she further provided that the warden and deputies were not to disclose the identity of these witnesses to their corrections officers. (Docket No. 28). This order was issued on June 28, 2011. (*Id.*). Mr. Fisher

---

[3] This case is styled *Commonwealth v. Melencheck*, CP-63-CR-0001409-2007, in the Court of Common Pleas of Washington County. (Docket No. 161-3).

mailed Judge Lenihan's Order to Mr. Melencheck, along with a letter dated June 29, 2010,[4] concerning his safety while in jail. (Docket No. 158-1, at 15–17).

On July 3, 2011, Mr. Melencheck wrote that he received Judge Lenihan's Order, but he continued to express concerns about his safety and asked that Mr. Fisher help him from being placed in the county jail. (Docket No. 158-1, at 18). Mr. Fisher responded on July 11, 2011, stating that this was the best he could do to secure his safety. (*Id.* at 19). On September 18, 2011, Mr. Melencheck complained to Mr. Fisher that he was subjected to wrongful treatment by correctional officials, allegedly in retaliation for his involvement in this case. (*Id.* at 20–22). During a status conference with Judge Lenihan, Mr. Fisher told the court about these additional letters and his concerns. (Docket No. 158, at 9, ¶ 7). Judge Lenihan discouraged him from pursuing the matter any further, except to the extent that any retaliation that Mr. Melencheck had suffered was adequately preserved for trial. (*Id.*). Nevertheless, Mr. Fisher stresses that he was not aware of Mr. Melencheck's particular views on the subject of retaliation until the July 3 letter. (*Id.*).

B. **Pending Motion**

Defendants have expressed their intention to impeach Mr. Melencheck's testimony for possible bias,[5] including bias rooted in his relationship with Mr. Fisher. (Docket No. 157, at 10–11). One theory that Defendants put forward involves the dates of communication between Mr. Fisher and Mr. Melencheck. (*Id.* at 12–13, 15–18). As referenced above, Mr. Fisher sent Mr. Melencheck two letters that were dated "2010," and which Mr. Fisher claims were issued with typographical errors, because both letters were actually prepared in 2011. (Footnotes 2, 4, and

---

[4] Mr. Fisher argues that this letter was also misdated, and was actually sent on June 29, 2011. (Docket No. 162, at 94).
[5] Witnesses can always be impeached for bias. *Grant v. Lockett*, 709 F.3d 224, 236 (3d Cir. 2013) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). The Court notes that juries are instructed to assess witnesses' credibility by considering whether witnesses have any bias or interest in the case. *See, e.g.*, MODEL CIV. JURY INSTR. 3rd Cir. § 1.7 (2011).

accompanying text, *supra*). Defendants point out that if these letters were actually prepared by Mr. Fisher in 2010, Defendants would have evidence raising serious questions about Mr. Melencheck's veracity, given that the April 2010 letter would have been written *before* the incident in question even occurred. (Docket No. 157, at 15). Therefore, Defendants reason that Mr. Fisher may become a witness at trial. For example, Mr. Joyal argued at the Motion hearing that Mr. Fisher may need to testify about when he actually wrote the letters, given that he prepared the letters and has personal knowledge of their dates. (Docket No. 162, at 71–72). Additionally, Mr. Joyal pointed to statements that Mr. Fisher made at the Pretrial Conference, wherein Mr. Fisher said that he plans to rehabilitate Mr. Melencheck by asking Mr. Melencheck questions about their course of dealings and relationship—something that Mr. Joyal argues would amount to unsworn testimony from Mr. Fisher. (*Id.* at 74).

The Defendants' second theory involves Mr. Fisher's efforts to obtain assurances that Mr. Melencheck would not suffer retaliation while being housed at the Washington County Correctional Facility for another case. To this end, Mr. Joyal has expressed his intention to probe the nature of Mr. Melencheck's relationship with Mr. Fisher, and whether Mr. Melencheck is offering biased testimony in exchange for legal services from Mr. Fisher. (Docket No. 157, at 17; Docket No. 162, at 100). Mr. Joyal argues that the possibility of a quid pro quo relationship between Mr. Fisher and Mr. Melencheck makes it likely that Mr. Fisher will offer testimony at trial—either sworn or unsworn—to refute that theory. (*Id.*).

## II. LEGAL STANDARD

The issue before this Court is whether Attorney Fisher and/or Attorney Tucker are disqualified from serving as Plaintiff's counsel at trial. "The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys

appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (citations omitted). However, "motions to disqualify are an 'extreme sanction' that should not be imposed lightly." *Reg'l Emp'rs' Assurance Leagues Voluntary Emps. Beneficiary Ass'n Trust v. Castellano*, Civ. A. No. 03–6903, 2009 WL 1911671, at *2 (E.D. Pa. July 1, 2009) (quoting *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa.1999)). Disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Martin v. Turner*, Civ. A. No. 10-1874, 2011 WL 717682 (E.D. Pa. Feb. 18, 2011) (quoting *Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 457 (D.N.J. 2010)). Therefore, "motions to disqualify opposing counsel are disfavored . . . not only because disqualification robs one's adversary of her counsel of choice, but also because of the risk . . . one could subvert the ethical rules in an attempt to use them as a procedural weapon." *Wolf, Block, Schorr & Solis–Cohen LLP*, Civ. A. No. 05–6038, 2006 WL 680915, at *1 (E.D. Pa. Mar. 9, 2006) (citations omitted); *see also Caracciolo v. Ballard*, 687 F. Supp. 159, 160–61 (E.D. Pa. 1988) ("The Code of Professional Responsibility is applied to deter professional misconduct, and to preserve the profession's standing in the community—it was not intended as an addition to the depressingly formidable array of dilatory strategies already part of the litigator's arsenal.").

The Court of Appeals for the Third Circuit applies a balancing approach in resolving motions to disqualify counsel. Under this approach, the district court must weigh the value of using disqualification to enforce applicable disciplinary rules against the value of upholding policies such as "permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Mumma v. Bobali Corp.*, 382 F. App'x 209, 210 (3d Cir. 2010) (citing *Miller*, 624 F.2d at 1201). The moving party bears the burden of producing clear evidence that opposing counsel's ongoing representation is impermissible. *Buschmeier v. G&G*

*Investments, Inc.*, Misc. No. 3-506, 2007 WL 4150408, at *5 (W.D. Pa. Nov. 19, 2007).

**III.   LEGAL ANALYSIS**

Although Defendants seek disqualification of both Mr. Fisher and Mr. Tucker, the arguments center almost entirely around Mr. Fisher, and so the Court will begin by addressing Defendants' arguments with respect to Mr. Fisher.

**A.   Disqualification of Mr. Fisher Based on the Advocate-Witness Rule**

Local Rule 83.3(A)(2) implements the Rules of Professional Conduct that are adopted by the Supreme Court of Pennsylvania. The Rules provide:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work a substantial hardship on the client.
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Pa. R.P.C. 3.7.

At the outset, the Court notes that courts have found the party moving for disqualification pursuant to Rule 3.7 bears a weighty burden. *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96, 99 (D. Del. 1987). As a threshold, the counsel's testimony must be necessary, meaning that "no other witness could testify" on the issue. *Kehrer v. Nationwide Ins. Co.*, 21 Pa. D. & C.4th 385, 389 (Pa. Comm. Pl. 1994).

### 1.   Unsworn Witness Issues

Defendants argue for disqualification based on two distinct theories of how Mr. Fisher may become a witness in the upcoming trial. First, Defendants raise the issue of unsworn testimony,

8

pointing to statements that Mr. Fisher made during the Pretrial Conference. (Docket No. 157, at 10–11). During that hearing, in the course of discussing the possibility that Mr. Joyal will attempt to impeach Mr. Melencheck for bias, Mr. Fisher indicated that he would attempt to rehabilitate Mr. Melencheck by questioning him about their relationship and course of dealings, in order to demonstrate that Mr. Melencheck has not tilted his testimony towards Plaintiff as part of a quid pro quo arrangement. (Docket No. 155, at 67–68). Defendants point out that allowing Mr. Fisher to examine Mr. Melencheck in this way might "give Attorney Fisher the opportunity to testify as to his actions without being subject to cross-examination." (Docket No. 157, at 14).

The unsworn witness rule is one facet of the advocate-witness rule, and concerns situations in which an attorney with personal knowledge about the facts interjects statements containing this personal knowledge. *See* Richard E. Flamm, *Lawyer Disqualification* § 16.3, at 309 (2003) (collecting cases). In effect, through the process of questioning a witness, the attorney might give testimony without being subject to cross-examination.[6] *Id.* As other courts have pointed out, this scenario strikes at Rule 3.7's core concern, blurring the line between an attorney's role as advocate and as a witness with personal knowledge, impairing the fact-finding process. *United States v. Santiago*, 916 F. Supp. 2d 602, 614 (E.D. Pa. 2013) (citing *United States v. Evanson*, 584 F.3d 904,

---

[6] The Court notes that the jury instructions define evidence. The lawyers question witnesses about evidence, but the lawyers' statements are not evidence themselves. *See, e.g.,* MODEL CIV. JURY INSTR. 3d Cir. 1.5 (2011)
>The evidence from which you are to find the facts consists of the following:
>>(1) The testimony of the witnesses;
>>(2) Documents and other things received as exhibits;
>>(3) Any facts that are stipulated—that is, formally agreed to by the parties; and
>>[(4) Any facts that are judicially noticed—that is, facts I say you must accept as true even without other evidence.]
>
>The following things are not evidence:
>>(1) *Statements, arguments, and questions of the lawyers for the parties in this case*;
>>(2) Objections by lawyers.
>>(3) Any testimony I tell you to disregard; and
>>(4) Anything you may see or hear about this case outside the courtroom.

(emphasis added).

9

909 (10th Cir. 2009); *United States v. Locascio*, 6 F.3d 924, 933–34 (2d Cir. 1993)).

Applied in our case, the Court accepts Mr. Joyal's assertions that he intends to probe Mr. Melencheck for bias, and that Plaintiff's counsel may need to rehabilitate him. In that event, Plaintiff's attempts to establish Mr. Melencheck's credibility may elicit further testimony about his relationship, if any, with Mr. Fisher. If Mr. Fisher is conducting this examination, his questions might blur the line into testimony.

Although the Court recognizes the possibility that unsworn testimony issues could arise if Mr. Fisher examines Mr. Melencheck, the Court believes that this scenario can be avoided if Mr. Tucker—rather than Mr. Fisher—examines Mr. Melencheck. This remedy avoids the harsh effects of disqualifying Mr. Fisher completely and should insulate the trial proceedings from the possibility that unsworn testimony might arise. Therefore, rather than disqualify Mr. Fisher from representing Plaintiff at the trial, this Court will order that Mr. Fisher be restricted from examining Mr. Melencheck. Rather, Mr. Fisher's co-counsel, Mr. Tucker, may examine Mr. Melencheck, if necessary.

2. <u>Sworn Testimony Issue</u>

In the process of cross-examining Mr. Melencheck for bias, one of the Defendants' anticipated lines of questioning will relate to whether Mr. Fisher made promises to Mr. Melencheck in exchange for his testimony. (Docket No. 162, at 82). From there, Defendants argue that Mr. Fisher's testimony may become relevant. At the hearing conducted on this Motion, Mr. Joyal explained, once he begins impeaching Mr. Melencheck for credibility, "that credibility issue can only be relieved, if there is indeed one raised, by this attorney having to get up on the witness stand and testify about it under oath in front of the jury. . . . If [Mr. Fisher] calls Melencheck, if Melencheck gets on that witness stand, Mr. Fisher is now going to be a witness." (Docket No. 162,

at 87).

As a preliminary matter, this Court notes that Mr. Fisher has informed the Court that the Plaintiffs do not intend to call Mr. Fisher as a witness. (Docket No. 160, at 13). The disqualification issue is therefore cabined to a potential scenario in which the Defendants would call Mr. Fisher as a witness. To this end, the Court finds the legal analysis of *Kehrer v. Nationwide Insurance Company* persuasive. 21 Pa. D. & C.4th 385 (Pa. Comm. Pl. 1994). The *Kehrer* court observed that Rule 3.7 is normally used as grounds for disqualification when counsel is called to testify on behalf of his client. *Id.* at 392. When opposing counsel voices an intention to call an attorney as a witness, the court should "weed[] out spurious motions by placing a heavy burden on the movant to demonstrate the necessity of the testimony of opposing counsel." *Id.* at 393.

A lawyer is a "necessary" witness within the meaning of Rule 3.7(a) when that lawyer "has crucial information in his possession, which must be divulged." *Roberts v. Ferman*, Civ. No. 09-4895, 2011 WL 4381128, at *2 (E.D. Pa. Sept. 16, 2011) (citing *AAMCO Transmissions, Inc. v. Baker*, Civ. No. 06-5252, 2008 WL 5272781 (E.D. Pa. Dec. 18, 2008)). If this information is "cumulative or can be obtained elsewhere," the attorney is not a "necessary" witness. *Id.*; *United Food and Commercial Workers Health and Welfare Fund of Ne. Pa. v. Darwin Lynch Adm'rs, Inc.*, 781 F. Supp. 1067, 1069–71 (M.D. Pa. 1991). The Comment to Rule 3.7 advises courts to consider "the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." Pa. R.P.C. 3.7(a) cmt. 4.

In this case, Mr. Fisher would not be a "necessary" witness within the meaning of Rule 3.7 because any testimony that Mr. Fisher could provide is available from other sources. *See Roberts*, 2011 WL 4381128, at *3 (finding a witness to be necessary because no other witness would be able to testify to the issue). Mr. Melencheck is fully capable of testifying about his relationship

with Mr. Fisher, if any, and whether any quid pro quo arrangement was made. In addition, the written correspondence between the two will surely be used as exhibits with which to cross-examine Mr. Melencheck. Although Mr. Fisher could potentially testify about the dates that he sent letters to Mr. Melencheck and address the two alleged typographical errors, Mr. Fisher's testimony is not necessary because Mr. Fisher's secretary could testify as to the same, or Mr. Melencheck could testify as to the dates that he received the letters. In short, the Defendants have not met their burden of bringing forth evidence that would persuade this Court that, on balance, disqualification is necessary. *See, e.g., Albert M. Greenfield & Co., Inc. v. Alderman*, 52 Pa. D. & C.4th 96, 2001 WL 1855056, at *9 (Pa. Comm. Pl. 2001) (balancing various factors and deciding that disqualification was not warranted). Defendants have not shown any testimony that Mr. Fisher would be called to give and that could not be obtained from other sources.

Furthermore, Mr. Fisher's testimony would not be necessary because it would be cumulative. *See* Flamm, *supra*, at 327 (defining "cumulative" testimony as that which duplicates or corroborates testimony from other witnesses, and collecting cases); FED. R EVID. 403 (giving the court discretion to limit cumulative evidence). Defendants have not pointed to any testimony that Mr. Fisher might give that would conflict with any other witness's testimony, which might indicate that Mr. Fisher's testimony would be necessary, rather than just cumulative. During his deposition, Mr. Melencheck's consistent position was that nothing was offered to him in exchange for his testimony. (Docket No. 86-11, at 10–14, 40–44). Mr. Fisher has also repeatedly and strenuously represented to the Court that there was nothing untoward about his conduct with respect to arranging for Mr. Melencheck to become a witness in this case. (Docket No. 155, at 72; Docket No. 158, at 7–9; Docket No. 160, at 9–10, 12–15; Docket No. 162, at 89–97). No other witnesses have been identified who would testify as to Mr. Fisher offering anything to obtain Mr.

Melencheck's testimony. Therefore, even if Mr. Fisher were called to the stand, any testimony he would give regarding the absence of a quid pro quo arrangement would be cumulative, corroborating evidence that can be otherwise attained. *See Kehrer*, 21 Pa. D. & C.4th at 394 (finding that attorney was not "necessary" because he could not "provide evidence on the contested issue . . . that is not available from any other witness and is prejudicial to [his clients]").

### B. Disqualification of Mr. Fisher and Mr. Tucker Based on the Inadvertent Disclosure Issue

Defendants have also moved for disqualification of both Mr. Fisher and Mr. Tucker on the grounds that they failed to return privileged documents to Mr. Joyal. (Docket No. 157, at 18–20). The underlying issue—inadvertently disclosed privileged documents—was addressed in this Court's prior ruling. (Docket No. 163). In light of this Court ruling, which found that the Defendants had waived the privilege with respect to those disclosed documents, (*id.* at 5), the Court now finds that Defendants' motion for disqualification on this ground is unavailing.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion at Docket No. [157] is DENIED to the extent that Defendants seek disqualification of Plaintiff's counsel. The Court further orders that Mr. Fisher is restricted from examining Mr. Melencheck, and that Mr. Tucker may examine this witness, if required.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: October 17, 2013
cc/ecf: All counsel of record